UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LISA H. SHIRK, ) | CASE NO. 1:14CV2844 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| CAROLYN W. COLVIN[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, ) | AND ORDER |
| ) | |
| Defendant. ) | |

Plaintiff Lisa H. Shirk ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on May 22, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred in her analysis of the opinion of Plaintiff's treating psychologist. ECF Dkt. #15. Defendant filed a response brief on July 21, 2015. ECF Dkt. #17. Plaintiff filed a reply brief on August 4, 2015. ECF Dkt. #18.

For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES the instant case with prejudice.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on March 21, 2013. ECF Dkt. #11 ("Tr.") at 23.[2] These claims were denied initially and upon reconsideration. *Id.* Plaintiff then requested a hearing before an ALJ, and her hearing was held on June 4, 2014. *Id.* at 39.

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

On June 23, 2014, the ALJ denied Plaintiff's applications for DIB and SSI. Tr. at 20. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. *Id.* at 25. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 10, 2012, the amended alleged onset date. *Id.* The ALJ determined that Plaintiff suffered from the following severe impairments: arthritis (right knee); degenerate disc disease; asthma/chronic obstructive pulmonary disease; affective disorder; anxiety disorder; and substance addiction disorder. *Id.* at 26. Following her analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* After considering the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she was able to: occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; stand and walk six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. *Id.* at 28. Further, the ALJ found that Plaintiff: had unlimited ability to push and pull, other than the limits provided for pushing and carrying; could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, poor ventilation, and hazards such as unprotected heights. *Id.* The ALJ also determined that Plaintiff could perform repetitive and routine tasks (unskilled work) with no high performance demands or fast pace requirement, and with infrequent changes. *Id.* Finally, the ALJ found that Plaintiff could perform low stress work, meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility. *Id.*

Next, the ALJ determined that Plaintiff had no past relevant work. Tr. at 31. The ALJ stated that Plaintiff was a younger individual, had at least a high school education, could communicate in English, and that the transferability of job skills was not an issue because Plaintiff did not have past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* In conclusion, the ALJ found that Plaintiff had not been under a

disability, as defined in the Social Security Act, from August 10, 2012 through the date of the decision. *Id.* at 30.

A request for review of the ALJ's decision was filed with the Appeals Council on July 16, 2014. Tr. at 19. This request for review was denied. *Id.* at 6. At issue is the decision of the ALJ dated June 23, 2014, which stands as the final decision. *Id.* at 20.

On December 30, 2014, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on May 22, 2015, posing the following questions to the Court for resolution:

> Whether the administrative law judge erred in her analysis of the opinion of Treating Psychiatrist Messerly where:
>
> 1. Her limited factual analysis overstates the record and relies on evidence prior to onset to support giving Dr. Messerly's opinion little weight; and
>
> 2. Her legal analysis fails to provide good reasons, sufficient under Social Security's own rules and regulations, to support giving Dr. Messerly's opinion little weight (and non-examining State agency opinion great weight)?

ECF Dkt. #15 at 1. Defendant filed a response brief on July 21, 2015. ECF Dkt. #17. Plaintiff filed a reply brief on August 4, 2015. ECF Dkt. #18.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

After determining that Plaintiff met the insured statues requirements of the Social Security Act through December 31, 2014 and that she had not engaged in substantial gainful activity since August 10, 2012, the ALJ determined that Plaintiff had severe impairments that had more than a minimal effect upon her ability to engage in basic work-related activities, as detailed above. Tr. at 26. Continuing, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In making this determination, the ALJ considered Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine), Listing 3.02 (chronic pulmonary insufficiency), Listing 3.03 (asthma), Listing 12.04 (affective disorder), Listing 12.06 (anxiety-related disorders), and Listing 12.09 (substance addiction disorders). *Id.* The ALJ

provided an explanation for each Listing that she considered and determined that none of the Listings were met or medically equaled.

When determining that Plaintiff's mental impairments did not meet or medically equal paragraph (B) of Listings 12.04, 12.06, or 12.09, the ALJ found that Plaintiff's activities of daily living were mildly restricted. Tr. at 27. Specifically, the ALJ indicated that Plaintiff lived alone, cooked, and attended AA meetings. *Id.* Further, the ALJ stated that Plaintiff was capable of personal care, cleaning, and doing laundry. The ALJ also found that Plaintiff had mild difficulties in social functioning, citing the opinion of two state-agency psychologists and noting that Plaintiff worked part-time, attended school, shopped, and attended AA meetings. *Id.* at 28. With regard to concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties insofar as she shopped, handled her finances, and attended school, and that this position was supported by the opinions from the state-agency psychologists. *Id.* Additionally, the ALJ determined that Plaintiff had not experienced episodes of decompensation that were of extended duration. *Id.* Since Plaintiff's mental impairments did not cause two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ determined that the paragraph (B) criteria were not satisfied. *Id.* The ALJ also determined that the criteria of paragraph (C) were not satisfied because Plaintiff was able to function independently outside her home, attend school, and work. *Id.*

After considering the record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she was able to: occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; stand and walk six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. Tr. at 28. Further, the ALJ found that Plaintiff: had unlimited ability to push and pull, other than the limits provided for pushing and carrying; could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, poor ventilation, and hazards such as unprotected heights. *Id.* The ALJ also determined that Plaintiff could perform repetitive and routine tasks (unskilled work) with no high performance demands or fast pace requirement, and with infrequent

changes. *Id.* Finally, the ALJ found that Plaintiff could perform low stress work, meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility. *Id.*

The ALJ indicated that she considered all of Plaintiff's symptoms and the extent to which each of these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Tr. at 29. Continuing, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. *Id.* The ALJ recognized that Plaintiff suffered from asthma, as shown by emergency room visits in July 2011 and November 2011 due to acute bronchitis, and that there were exacerbations of her asthma in August 2013 and November 2013. *Id.* Further, Plaintiff underwent a pulmonary function study, with results showing mild airway obstruction with significant improvement post bronchodilator, mild-to-moderate hyperinflation, normal diffusion capacity, and a moderate increase in airway resistance. *Id.* The ALJ indicated that Plaintiff underwent a CT scan of her chest in March 2014, which showed normal results. *Id.* Additionally, the ALJ noted that Plaintiff was smoking until as late as February 2014. *Id.*

Regarding Plaintiff's musculoskeletal impairments, the ALJ indicated that a July 2012 MRI of Plaintiff's lumbar spine showed no focal protrusion or extension, broad disc bulges at L4-L5 and 15-51, and a small annular tear at L4-L5. Tr. at 29. The ALJ stated that a CT scan performed in October 2013 revealed significant osteoarthritic changes of Plaintiff's facet joints of L4-5 and L5-S1, a congenital defect with a bifid appearance of the spinous process of L5, and degenerative disc disease. *Id.* Next, the ALJ indicated that an MRI of Plaintiff's left hip showed moderate degenerative changes, and that she received physical therapy for her left hip and epidural injections for the pain. *Id.* at 29-30. The ALJ stated that Plaintiff's orthopedist, Benjamin Abraham, M.D., described Plaintiff as a "forty-nine year old female with axial low back pain in the setting of the etoh [sic] abuse history and facet arthropathy, pars defect." *Id.* at 30. Continuing, the ALJ noted that Dr. Abraham recommended that Plaintiff attend a pain rehabilitation program because physical therapy, nonsteroidal anti-inflammatory drugs, and an epidural steroid injection had failed, and because Plaintiff was not a candidate for opioid therapy and was unlikely to benefit from surgical

-5-

correction. *Id.* The ALJ also noted that Plaintiff was examined at a pain management clinic on March 26, 2014, and was found to have normal muscle strength, normal sensations, and normal reflexes, and received an epidural injection. *Id.*

The ALJ provided great weight to the opinion of the state-agency physicians who reviewed the evidence of record and opined that Plaintiff was capable of light work with the above stated limitations. Tr. at 30. As for the reasoning behind affording great weight to these opinions, the ALJ indicated that the opinions were consistent with the evidence and that although Plaintiff had degenerative changes, she had normal muscle strength, normal sensations, normal reflexes, and was not a surgical candidate. *Id.*

Next, the ALJ indicated that Plaintiff underwent a psychological examination performed by Margaret Zerba, Ph.D., on December 13, 2013. Tr. at 30. Dr. Zerba assigned Plaintiff a global assessment of functioning ("GAF") score of thirty-one, indicating that Plaintiff had major impairments in the areas of work, school, family relations, judgment, or thinking. *Id.* The ALJ gave little weight to Dr. Zerba's opinion, indicating that Dr. Zerba reported that Plaintiff had a diagnosis of polysubstance dependence, in early or partial remission, and because Plaintiff was hospitalized in January 2014 for an opiate overdose and was seen in an emergency room in April 2014 after taking extra doses of her Ativan medication while allegedly drinking alcohol. *Id.*

The ALJ gave little weight to the opinion of Margaret Messerly, M.D., Plaintiff's treating psychiatrist. Tr. at 30. The ALJ quoted the entirety of Dr. Messerly's report, which reads:

> [Plaintiff] has been receiving services at this agency since July 2011 and had previous treatment here from 2006 to 2009. She continues to struggle with symptoms of depression, anxiety, mood instability, inconsistent sleeping, eating and energy. She demonstrates high reactivity to interpersonal stressors. Her ability to maintain steady employment is impacted by decreased memory, concentration and focus due to high anxiety and depressed mood. She is unlikely to manage moderate pressures of standard work place environment, interaction with coworkers and criticism from supervisors. She is recommended to continue to participate in psychiatric, counseling and educational services as available including DBT referral. [sic]

*Id.*; *Id.* at 800. As for the reasoning behind affording little weight to Dr. Messerly's opinion, the ALJ correctly stated that the opinion made no reference to Plaintiff's substance abuse, and also stated that Dr. Messerly's treatment notes showed that Plaintiff functioned normally when clean and sober. *Id.* at 30. To support the latter position, the ALJ cited the GAF score of 71 assigned by Dr.

-6-

Messerly in July 2011, as well as reports indicating that Plaintiff: was stable on medications, dated October 2011; attending school and working part-time, dated February 2012; was off her medications and using crack cocaine as of March 2013; was hospitalized for a heroin overdose in January 2014; and was found to be intoxicated during hospitalization in April 2014. *Id.* at 30-31. Further, the ALJ relied upon Dr. Zerba's assessment that Plaintiff was capable of living alone and could clean, prepare meals, do laundry, shop, and handle her finances. *Id.* at 31. Additionally, the ALJ noted that the state-agency psychologists did place limitations on the complexity of the tasks Plaintiff could perform and upon the degree that she could interact socially to the extent reflected by the medical evidence. *Id.*

Continuing, the ALJ determined that Plaintiff was unable to perform any past relevant work, was a younger individual on the amended alleged disability onset date, but subsequently changed age category to an individual closely approaching advanced age, and had a high school education. Tr. at 31. The ALJ found that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 10, 2012 through the date of the ALJ's decision. *Id.* at 32.

### III.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. §§ 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made

-7-

>> without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes

a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole,* 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citations omitted)).

## V.    LAW AND ANALYSIS

Plaintiff argues that the ALJ erred in her analysis of the opinion provided by Plaintiff's treating psychiatrist, Dr. Messerly, raising the following questions for the Court's consideration:

> Whether the administrative law judge erred in her analysis of the opinion of Treating Psychiatrist Messerly where:
>
> 1.   Her limited factual analysis overstates the record and relies on evidence prior to onset to support giving Dr. Messerly's opinion little weight; and
>
> 2.   Her legal analysis fails to provide good reasons, sufficient under Social Security's own rules and regulations, to support giving Dr. Messerly's opinion little weight (and non-examining State agency opinion great weight)?

ECF Dkt. #15 at 1. Plaintiff has asserted that the ALJ erred in her factual and legal analysis regarding the opinion of Dr. Messerly. Both of Plaintiff's assignments of error will be taken in turn.

### A.    The ALJ's Factual Analysis

Plaintiff begins be reciting the reasons provided by the ALJ for affording little weight to the opinion of Dr. Messerly, namely, that the opinion did not reference substance abuse and the medical evidence indicated that Plaintiff functioned normally when clean and sober. ECF Dkt. #15 at 14. Specifically, Plaintiff references the ALJ's consideration of the following: Plaintiff's GAF score of 71 assigned in July 2011; a report indicating that Plaintiff was working part-time and attending school, dated February 7, 2012; a report indicating that Plaintiff was off her medications and using crack cocaine, dated March 2013; Plaintiff's hospitalization for a heroin overdose in January 2014; and an emergency room record stating that Plaintiff was found to be intoxicated, dated April 2014. *Id.*

Plaintiff first argues that the ALJ's reliance on evidence dated significantly prior to the amended onset date did not support her conclusions concerning the opinion of Dr. Messerly. ECF Dkt. #15 at 14. The initial alleged onset date of January 1, 2010 was amended to August 10, 2012 at the hearing before the ALJ. The GAF score of seventy-one assigned in July 2011 and the note

indicating Plaintiff worked part-time and was attending school, dated February 7, 2012, predate the alleged onset date. Plaintiff cites no precedent indicating that the ALJ erred when considering evidence from before the alleged onset date. In fact, regulations issued by the Social Security Administration suggest the contrary when discussing the relationship between a claimant and a treating physician, stating that treating sources should be provided greater deference because they are the medical professional most able to "provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence..." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Plaintiff simultaneously asks that the Court find that the ALJ erred in affording Dr. Messerly lesser weight because of the treating psychologist relationship while asking that the Court find that the ALJ erred because she looked to the entirety of the treating psychologist relationship. Moreover, regulations promulgated by the Social Security Administration indicate that the treating physician should be provided greater deference because of the nature and length of the doctor-patient relationship, and Plaintiff has failed to cite any precedent indicating that the ALJ erred by looking at the entirety of the medical evidence available at the time of the decision. Accordingly, Plaintiff's argument that the ALJ erred when considering evidence outside of the period of disability is without merit.

Plaintiff next argues that the fact that Dr. Messerly's letter did not reference substance abuse is not fatal to her position because Plaintiff was clean and sober at the time Dr. Messerly provided her opinion. ECF Dkt. #15 at 15. Again, Plaintiff cites no precedent indicating that her sobriety at the time of any given opinion can remedy the fact that a treating psychiatrist has wholly excluded conduct by a claimant that has repeatedly been presented as relevant to the claimant's medical condition. *See generally* Tr. (the record is replete with discussions of Plaintiff's substance abuse). The ALJ reasonably concluded that the absence of any discussion of Plaintiff's substance abuse calls into question the weight that should be afforded to the treating psychologist's opinion. Further, evidence suggests that substance abuse was an ongoing issue for Plaintiff after the alleged disability onset date. Plaintiff admits to a six-week relapse during which she used crack cocaine, and also admits to later overdosing on heroin and subsequently overdosing on her prescribed benzodiazepine medication. ECF Dkt. #15 at 15-16.

Additionally, Plaintiff's assertion that the most important factor regarding the opinion of Dr. Messerly is that it was written in present tense in June 2014, revealing no evidence that substance abuse was influencing Plaintiff's functioning at that time, is without merit. CF Dkt. #15 at 16.  No where does Dr. Messerly indicate in the opinion that Plaintiff was not affected by her substance abuse issues, and Plaintiff does not explain why the total lack of discussion of her substance abuse issues, of which Dr. Messerly was aware, is evidence that Dr. Messerly felt that Plaintiff's condition was in no way influenced by substance abuse issues at the time the opinion was issued.  Rather, the record suggests that Plaintiff was still struggling with substance abuse issues just months before Dr. Messerly's opinion, as evidenced by her appearance in an emergency room for a heroin overdose in January 2014, and again in April 2014 after failing a breathalyzer test and testing positive for an overdose of one of her medications.  Plaintiff indicates she did not have a significant amount of alcohol in her system once examined at the hospital in April 2014, but does not elaborate on how much time had passed between the failed breathalyzer test and the test administered at the hospital, and does not explain the reason she had ingested an overdose of her medication.  Further, Plaintiff's claim that her single heroin overdose five months before Dr. Messerly's opinion, in an attempt to commit suicide, was not relevant to the opinion of Plaintiff's treating psychiatrist, and thus was properly excluded from Dr. Messerly's opinion, is wholly without merit.  *See* ECF Dkt. #15 at 15-16.  Plaintiff had two drug overdoses resulting in hospitalization within the five months leading up to the opinion issued by Dr. Messerly, at least one of which was a suicide attempt.  Plaintiff's contention that substance abuse was a non-relevant factor at the time that Dr. Messerly issued her opinion is simply not plausible.

Plaintiff's final contention regarding the factual analysis performed by the ALJ is that the finding that Plaintiff had normal functioning when clean and sober was not supported by the record as a whole.  ECF Dkt. #15 at 16.  The Court recognizes that there are pieces of evidence in the record that indicate that Plaintiff had some functional limitations during periods when she was not noted as actively using drugs, as claimed by Plaintiff.  *Id.* at 16-17.  There is also evidence in the record showing that Plaintiff acted normally during periods of sobriety, and the ALJ specifically recognized that Plaintiff was assigned a GAF score of seventy-one, indicating only slight

-11-

impairments in social, occupational, or school functioning, in July 2011. Tr. at 30. Further, the ALJ stated that Plaintiff was reported as stable in October 2011, and worked part-time and attended school in February 2012. *Id.* at 30-31. In addition to this evidence, the ALJ's decision also discussed Dr. Zerba's December 2013 opinion that Plaintiff appeared cooperative, clear, oriented, and as having average intelligence, even after opining that Plaintiff suffered from a number of impairments and diagnosing Plaintiff with polysubstance dependance, in partial remission. Tr. at 30-31.

Plaintiff's argument is not well taken. The ALJ cited substantial evidence that supported the denial of benefits, and that finding must be affirmed even if a preponderance of the evidence exists in the record upon which the ALJ could have found Plaintiff disabled. *Rogers,* 486 F.3d at 234. Moreover, even if Plaintiff were to succeed in arguing that she did not function normally when clean and sober, she still relies on the opinion of her treating physician to demonstrate that she suffered disabling impairments. As discussed above, the ALJ properly afforded little weight to Dr. Messerly's opinion because it made no mention of substance abuse.

For these reasons, the Court finds that the ALJ did not err in her factual analysis.

### B. The ALJ's Legal Analysis

Plaintiff argues that the ALJ erred in her legal analysis because she failed to provide good reasons for the weight afforded to the opinion of Dr. Messerly, Plaintiff's treating psychiatrist. ECF Dkt. #15 at 18. Plaintiff's argument is similar to her argument that the ALJ erred in her factual analysis and asserts that the ALJ failed to explain why she did not provide controlling or significant weight to Dr. Messerly's opinion, and likewise failed to explain why she afforded great weight to the opinion of the state-agency physicians. *Id.* at 18-21.

It has already been addressed as to why the ALJ properly afforded little weight to Dr. Messerly's opinion, namely, because the opinion failed completely to address any of Plaintiff's substance abuse issues or the evidence thereof, which appears frequently in the record. Plaintiff now contends that the ALJ erred when addressing Dr. Messerly's opinion by not considering: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. ECF

Dkt. #15 at 19 (citing *Rogers*, 486 F.3d at 242). Plaintiff's argument is without merit. The ALJ clearly indicated the length of the treating relationship, noting that Dr. Messerly stated that Plaintiff had been receiving treatment since 2011, and had previously been treated from 2006 to 2009. Tr. at 30. Continuing, the ALJ noted multiple times that Plaintiff visited Dr. Messerly and the assessments made regarding Plaintiff's condition. *Id.* at 30-31. As discussed above, the ALJ provided reasons why Dr. Messerly's opinion was inconsistent with the record and was thus not supported by the evidence. *See id.* at 30. Further, the ALJ recognized that Dr. Messerly was a psychiatrist and indicated that she was considering Dr. Messerly's opinion insofar as it pertained to Plaintiff's mental limitations. *Id.* The ALJ did consider the relevant factors when addressing Dr. Messerly's opinion.

Finally, Plaintiff argues that the ALJ provided great weight to the opinion of the state-agency psychiatrists with no analysis. ECF Dkt. #15 at 19-20. Prior to affording great weight to the opinion of the state-agency psychiatrists, the ALJ laid out the medical evidence insofar as it pertains to Plaintiff's mental impairments, discussed the opinion of Dr. Zerba and the opinion of Dr. Messerly, as well as hospital records, and then indicated that the opinion of the state-agency psychiatrists were consistent with the evidence. Plaintiff does not indicate how the ALJ erred when affording great weight to the opinion of the state-agency psychiatrists or what evidence suggests that the opinions of the state-agency psychiatrists were inconsistent with the medical evidence. The ALJ discussed the medical evidence and then found that the opinions of the state-agency psychiatrists were consistent with the evidence.

For these reasons, the Court finds that the ALJ did not err in her legal analysis.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

Date: March 9, 2016          */s/George J. Limbert*
                             GEORGE J. LIMBERT
                             UNITED STATES MAGISTRATE JUDGE

-14-